No. 14-2030

_____

**United States Court of Appeals for the Fourth Circuit**

HUMPHREYS & PARTNERS ARCHITECTS, L.P.,

*Plaintiff/Appellant,*

v.

LESSARD DESIGN, INCORPORATED; LESSARD GROUP INCORPORATED; CHRISTIAN J. LESSARD; CLARK BUILDERS GROUP, LLC; PDT BUILDERS, LLC; THE PENROSE GROUP; SIXTH PENROSE INVESTING COMPANY LLC; NORTHWESTERN INVESTMENT MANAGEMENT COMPANY, LLC; NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

*Defendants/Appellees.*

_____

On Appeal from the United States District Court for the
Eastern District of Virginia, In Case No. 13-cv-433, Judge T. S. Ellis, III

_____

**BRIEF OF APPELLEES,
LESSARD, PENROSE, NORTHWESTERN, AND CLARK**

ANTIGONE GABRIELLA PEYTON
KANDIS M. KOUSTENIS
CLOUDIGY LAW PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
(703) 436-2033

*Counsel for The Penrose Group; PDT Builders, LLC; Sixth Penrose Investing Company, LLC; and Clark Builders Group LLC*

PATRICK J. COYNE
CHRISTOPHER P. FOLEY
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000

*Counsel for Lessard Design, Inc., Lessard Group Inc., and Christian J. Lessard*

CHRISTOPHER P. MEAD
LONDON & MEAD, LLP
1225 19th St., N.W.
Washington, D.C. 20036
(202) 331-3334

*Counsel for Northwestern Investment Management Company, LLC, and Northwestern Mutual Insurance Company*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Appellees, Lessard Design, Inc., Lessard Group Inc., Christian J. Lessard (collectively, "Lessard"), The Penrose Group, Sixth Penrose Investing Company LLC, PDT Builders, LLC (collectively, "Penrose"), Northwestern Mutual Life Insurance Co., Northwestern Investment Management Company LLC (collectively, "Northwestern"), and Clark Builders Group LLC ("Clark"), make the following disclosures:

1.    Is party a publicly-held corporation or other publicly-held entity?  No.

2.    Does party have any parent corporation? If yes, identify all parent corporations, including grandparent and great grand-parent corporations:

Lessard Design is a wholly-owned subsidiary of The Lessard Group. Clark Builders Group LLC is a wholly-owned subsidiary of Construction Capital LLC. PDT Builders LLC is a joint venture between members Sixth Penrose Investing Company LLC and The Donohoe Companies, Inc. Otherwise, no.

3.    Is 10% or more of the stock of a party owned by a publicly-held corporation or other publicly-held entity? If yes, identify all such owners:   No.

See also Exhibit 1 to Docket Nos. 5 and 6 for the Northwestern entities.

4.    Is there any other publicly-held corporation or other publicly-held entity that has a direct financial interest in the outcome of the litigation? If yes, identify the entity and the nature of its interest:  No.

5.    Is party a trade association? If yes, identify any publicly-held member whose stock or equity value could be affected substantially by the outcome of the proceedings or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member. No.

6.    Does this case arise out of a bankruptcy proceeding? If yes, identify any trustee and the members of any creditors' committee: No.

# TABLE OF CONTENTS

I.  STATEMENT OF THE ISSUES ...................................................................1

II. COUNTERSTATEMENT OF THE CASE ...................................................2

    A.  The Multiplicity of Issues Reflects that HPA's Appeal Lacks Focus and Lacks Merit ................................................................2

    B.  HPA's Statement of the Case Includes Numerous Errors, Omissions, and Irrelevant Points...........................................4

        1.  HPA Adduced No Direct Evidence of Copying .........................5

        2.  The Nine Individual Features HPA Relies Upon to Establish Infringement Are Functional or Standard Features Not Protected by Copyright.........................8

        3.  HPA Did Not Identify Evidence Establishing a Genuine Issue of Material Fact That the Designs are Substantially Similar .....................................................10

            a)  The Idea of a High-Rise Residential Building Is Expressed Differently ....................................10

            b)  The Idea of Having Two Elevator Lobbies Connected by a Fire or Service Corridor Is Expressed Differently ....................................11

            c)  The Idea of "Direct Access" is Expressed Differently.................................................13

            d)  The Floor Plans Are Not Substantially the Same Shape...........................................................14

            e)  Mechanical/Electrical Rooms and Trash Chutes are Functional or Standard Features and Are Expressed Differently ....................................16

            f)  Exit Stairwells Are Functional and Are Expressed Differently.................................................17

            g)  The Concept of Diagonal Entrance Hallways is

Expressed Differently .......................................................18

    h)    The Concept of Vertical Elements on the Façades
Is Expressed Differently ...................................19

    i)    The Concept of a Standard Cornice Feature is
Expressed Differently ......................................21

III.    STANDARD OF REVIEW .....................................................24

IV.    SUMMARY OF ARGUMENT ...................................................25

V.    ARGUMENT....................................................................26

    A.    The District Court Correctly Followed Summary Judgment
Procedure .................................................................26

        1.    The District Court Properly Exercised Its Discretion
When Considering the Evidence of Record...........................26

        2.    The District Court Properly Admitted the Park Crest
Parties' Expert Reports and Declarations .................................30

    B.    There is No Direct Evidence of Copying ............................33

    C.    The District Court Properly Granted Summary Judgment of
Noninfringement ..........................................................36

        1.    The District Court Correctly Applied the Copyright Law........36

        2.    The District Court Properly Applied This Court's
Extrinsic Similarity Analysis ...................................40

    D.    The Park Crest Two Design Is Not Substantially Similar to
Protectable Features of the Grant Park Design .........................41

        1.    A High-Rise Building Is a Standard Feature and is
Expressed Differently .............................................42

        2.    Two Elevator Cores Connected by a Fire or Service
Corridor Is a Standard Feature Required by Code and is
Not Substantially Similar in the Two Designs ........................43

        3.    Direct Access is a Standard Feature and Is Expressed
Differently..............................................................44

        4.    A Barbell-Shaped Floor Plan is Standard Feature and Is

Expressed Differently ............................................................45

5.  Mechanical, Electrical, and Trash Rooms Are Functional and Standard Features and Are Expressed Differently............47

6.  Exit Staircases are Functional and Standard Features and Are Expressed Differently ........................................................48

7.  Diagonal Entrance Hallways in the Corner Units Are Standard Features and Are Expressed Differently...................49

8.  Vertical Elements on the Façade Are Standard Features and Are Expressed Differently.....................................................50

9.  Projecting Cornices is a Standard Feature and Is Expressed Differently ........................................................52

E.  The District Court Properly Analyzed the Overall Arrangement and Composition of Elements as Part of the Extrinsic Test and the Designs are Not Substantially Similar ...........................................52

F.  Intrinsic Analysis Was, and Is, Unnecessary to the Court's Judgment ..............................................................................55

VI.  THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF CLARK BECAUSE HPA FAILED TO IDENTIFY ANY EVIDENCE THAT CLARK HAD ACCESS TO THE COPYRIGHTED GRANT PARK DESIGN ......................................55

VII.  CONCLUSION...............................................................................59

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ale House Mgmt, Inc. v. Raleigh Ale House, Inc.*,
205 F.3d 137 (4th Cir. 2000) ...............................................................40

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................27

*Apple Computer v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ..............................................................40

*Attia v. Society of New York Hosp.*,
201 F.3d 50 (2d Cir. 1999) ................................................................40

*Axelrod & Cherveny Architects v. Winmar Homes*,
No. 2:05-cv-711, 2007 WL 708798......................................................59

*Barwick v. Celotex Corp.*,
736 F.2d 946 (4th Cir. 1984) .....................................................*passim*

*Blair v. Public Defender Services, Inc.*,
386 F.3d 623 (4th Cir. 2004) ..............................................................29

*Bldg. Graphics, Inc. v. Lennar Corp.*,
708 F.3d 573 (4th Cir. 2013) ..............................................24, 55, 56

*Bouchat v. Balt. Ravens Foot Club, Inc.*,
346 F.3d 514 (4th Cir. 2003) ..............................................................25

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
873 F. Supp.2d 1191 (N.D. Cal. 2012)................................................35

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
873 F.Supp. 2d 1192 (N.D. Cal. 2012)...................................5, 35, 36

*Celotex v. Catrett*,
477 U.S. 317 (1986)......................................................................27, 40

*Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*,
496 Fed. App'x 314 (4th Cir. 2012) (*Ross I*)...............................36, 55

*Charles W. Ross Builder, Inc. v. OlsenFine Home Bldg., LLC*,
977 F. Supp 2d 567 (E.D. Va. 2013) ................................................................41

*Creekmore v. Maryview Hosp.*,
662 F.3d 686 (4th Cir. 2011) ......................................................24, 33, 45, 55

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) ................................................................*passim*

*Feist Publ'ns, Inc. v. Rural Tel. Serv., Co.*,
499 U.S. 340 (1991)................................................................................*passim*

*Foreword Magazine v. Overdrive, Inc.*,
Docket No. 1:10-cv-1144, 2011 WL 5169384 (W.D. Mich. Oct.
31, 2011) ..........................................................................................................31

*Funky Films, Inc. v. Time Warner Entm't Co.*,
462 F.3d 1072 (9th Cir. 2006) .................................................................28, 55

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........................................................................................24

*Hennon v. Kirklands, Inc.*,
No. 94-2595, 1995 U.S. App. LEXIS 22582 (4th Cir. 1995)...........................30

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999) .....................................................................28

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
118 F.3d 199 (4th Cir. 1997) .........................................................................58

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*,
186 F. Supp.2d 1 (D. Mass. 2002).................................................................59

*Johnson v. Jones*,
149 F.3d 494 (6th Cir. 1998) .........................................................................58

*Kinty v. United Mine Workers*,
544 F.2d 706 (4th Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977) ..................57

*Logan Developers Inc. v. Heritage Bldgs., Inc.*,
No. 7:12-CV-323-F, 2014 WL 2547085 (E.D.N.C. June 5, 2014) ....................41

*Lyons P'ship v. Morris Costumes, Inc.*,
243 F.3d 789 (4th Cir. 2001) ...............................................................41

*M. Kramer Mfg. Co. v. Andrews*,
783 F.2d 421 (4th Cir. 1986) .........................................................34, 35

*Mahnke v. Washington Metro. Area Transit Auth.*,
821 F. Supp.2d 125 (D.D.C. 2011) ....................................................32

*McAirlaids, Inc. v. Kimberly-Clark Corp.*,
756 F.3d 307 (4th Cir. 2014) ..............................................................28

*Monterey Bay Homes, LLC v Chambers*,
11 F. Supp.3d 570, 579-80 (D.S.C. 2014) ....................................29, 59

*N5 Techs. v. Capital One N.A.*,
No. 1-13-cv-386, 2014 WL 354425 (E.D. Va. Jan. 30, 2014) ...................32, 33

*Narell v. Freeman*,
872 F.2d 907 (9th Cir. 1989) ..............................................................58

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
668 F.3d 1148 (9th Cir. 2012) ......................................................57, 58

*Retail Servs., Inc. v. Freebies Publ'g*,
364 F.3d 535 (4th Cir. 2004) ..............................................................24

*Rogers v. Koons*,
960 F.2d 301 (2nd Cir. 1992) .............................................................35

*Ross I*,
496 F. App'x at 318 ............................................................................41

*Sartor v. Arkansas Natural Gas, Corp.*,
321 U.S. 620 (1944)............................................................................30

*Schaffer v. CSX Transp., Inc.*,
462 F. App'x 597 (6th Cir. 2012) ......................................................32

*Siegler v. Am. Honda Motor Co.*,
532 F.3d 469 (6th Cir. 2008) .............................................................32

*Sierra Club v. Larson*,
    882 F.2d 128 (4th Cir. 1989) ...........................................................................57

*Stevenson v. City of Seat Pleasant, Md.*,
    743 F.3d 411 (4th Cir. 2014) ....................................................................*passim*

*Swirsky v Carey*,
    376 F.3d 841 (9th Cir. 2004) ............................................................................29

*T-Peg, Inc v. Vermont Timberworks, Inc.*,
    459 F.3d 97 (1st Cir. 2006) ...............................................................................29

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ............................................................................41

*Tolan v. Cotton*,
    134 S.Ct 1861 (2014)..................................................................................27, 28

*Towler v. Sayles*,
    76 F.3d 579 (4th Cir. 1996) .........................................................................32, 56

*United States v. Cole*,
    631 F.3d 146 (4th Cir. 2011) ....................................................................*passim*

*United States v. Grimmond*,
    137 F.3d 823 (4th Cir. 1998) .........................................................24, 33, 45, 55

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) ....................................................................*passim*

## Federal Statutes

17 U.S.C. § 101 .......................................................................................................37

17 U.S.C. § 102 .........................................................................................35, 37, 38

17 U.S.C. § 106 .......................................................................................................59

17 U.S.C. § 106(4) ..................................................................................................58

## Rules

Fed. R. Civ. P. 56 ..............................................................................................*passim*

Fed. R. Civ. P. 56(c)(1)(A) ........................................................30

Fed. R. Civ. P. 56(e)(1) ...........................................................31

Fed. R. Evid. 602 ..............................................................44, 46

**Regulations**

37 C.F.R. § 202.11(d)(2) (2014) ...............................................38

**Other Authorities**

H.R. Rep. No. 101-735 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935,
    *reprinted in* 1990 U.S.C.C.A.N. 6935 ......................................37, 38

# I.    STATEMENT OF THE ISSUES

Appellant, Humphreys & Partners Architects, L.P. ("HPA"), asserts eleven alleged errors by the district court. Instead, only one, and potentially two, issues are raised on this appeal. The first issue is dispositive of the claims against all Appellees: Lessard; Penrose; Northwestern; and Clark (collectively, the "Park Crest Parties").

1.    In view of the testimony of HPA's corporate representative and expert witness that the designs are different, was the district court correct in determining that there is no genuine dispute of material fact that the Park Crest Two and Grant Park architectural works are not substantially similar under this Court's "extrinsic evidence" test?

In the event this Court affirms the district court's judgment, this is the only issue that need be resolved on this appeal. In the event the Court does not affirm, the Court would need to address a second issue with respect to Clark only.

2.    Did the district court properly conclude, based on the uncontested evidence of record, that there is no genuine issue of material fact that Clark did not have access to the copyrighted work?

## II.    COUNTERSTATEMENT OF THE CASE

The Park Crest Parties disagree with HPA's Statement of the Case.

In order to maintain its claim for copyright infringement, HPA was initially required to establish, among other things, that the accused design is substantially similar to protectable elements of HPA's work.[1] HPA's corporate representative and expert witness admitted that the features on which Humphreys relies are functional or standard features and that the designs are different. Moreover, as the district court found as to each design element, HPA failed to identify evidence that would permit a reasonable jury to conclude that the designs are extrinsically similar. As a result, the district court properly held that HPA failed to demonstrate the designs are substantially similar, and correctly granted summary judgment for the Park Crest Parties.

### A.    The Multiplicity of Issues Reflects that HPA's Appeal Lacks Focus and Lacks Merit

None of HPA's eleven alleged errors has merit.

First, HPA contends that the district court weighed the evidence and found disputed facts. It did not. The district court held that HPA's declarations—which are conclusory, lack a factual foundation, fail to analyze the material issues, fail to respond to the Park Crest Parties' evidence, and contradict the sworn testimony of

---

[1] *Feist Publ'ns, Inc. v. Rural Tel. Serv., Co.*, 499 U.S. 340, 361 (1991).

HPA's corporate representative and expert witness—are not sufficient to genuinely dispute any material fact.

Second, HPA contends that the Park Crest Parties' expert reports were improperly admitted. In its sound discretion, the district court properly held that the Park Crest Parties' supplemental declarations cured the alleged deficiencies.

Third, HPA contends that the district court ignored "direct evidence of copying." HPA offered no direct evidence, or any evidence of protected features.

Fourth through seventh, HPA contends that the district court imposed a higher standard on architectural works, improperly "filtering out," separating, and ignoring individual features. HPA's Opening Br. at 32-52. It did not. The district court expressly analyzed the overall arrangement and composition of spaces and elements without "filtering out" any unprotectable elements. JA8056-57.

Eighth, HPA simply repeats its lament of direct evidence of copying. HPA offered none.[2]

Ninth, HPA contends that the district court did not properly analyze extrinsic similarity. The district court correctly applied this Court's test. JA8039-8058.

Tenth, HPA contends that the district court usurped the jury's role by analyzing intrinsic similarity. The district court expressly noted that the parties

---

[2] JA1604, 1627 (Humphreys); JA1532-1533, 1537-1539, 1541, 1543, 1545, 1547, 1550-51 (Figert).

disputed the intended audience, declined to resolve this issue as moot, and noted that the intrinsic similarity issue is for the jury. JA8058-8060.

Finally, HPA contends that the district court erred in dismissing Clark. This Court only needs to address this issue if the district court's judgment is not affirmed. HPA does not dispute that it adduced no evidence that Clark had access to the Grant Park design.

### B.   HPA's Statement of the Case Includes Numerous Errors, Omissions, and Irrelevant Points

Contrary to HPA's contentions, there is no issue on appeal of HPA's authorship of the copyrighted Grant Park design. Nor is there any issue regarding the validity of HPA's copyright. The Park Crest Parties did not raise these issues—which involve genuinely disputed facts—on summary judgment and the district court did not decide them.[3] There is also no issue on this appeal of the Lessard, Penrose, and Northwestern parties' access to HPA's copyrighted design. In contrast, the district court determined that there is no genuine dispute that Clark did not have access to the copyrighted Grant Park work. JA8034-8035. HPA's detailed discussion of authorship, validity, other Park Crest Parties' access to its Grant Park design, and other HPA projects, HPA's Opening Br. at 3-13, is simply irrelevant on this appeal.

---

[3] JA1483; JA7813; JA8027-8029.

Likewise, HPA contends that the district court erred in failing to credit HPA's alleged direct evidence of copying and that this evidence obviated the district court's substantial similarity analysis. HPA's Opening Br. at 2, 7-8, 52-53. Yet, there is no direct evidence of copying in this record.[4] The primary issue on appeal is whether it is genuinely disputed, under this Court's extrinsic similarity test, that there is not substantial similarity between HPA's registered Grant Park design and the Park Crest Two design. With respect to Clark, the uncontested evidence of record demonstrates that Clark never had access to the Grant Park design.

### 1.    HPA Adduced No Direct Evidence of Copying

HPA recites the types of evidence that may constitute direct evidence— defense admissions and instructions to copy, HPA's Opening Br. at 52—yet, identifies no such evidence of record. Indeed, HPA admitted that it has no direct evidence of copying.[5] HPA's only alleged "direct evidence" of copying is its expert's, Mr. Figert's, expert report. HPA's Opening Br. at 7-8, 52-53.[6] But Mr. Figert confirmed that he is not providing an opinion on the issue of copying:

---

[4] JA1604, 1627 (Humphreys); JA1532-1533, 1537-1539, 1541, 1543, 1545, 1547, 1550-51 (Figert).

[5] JA1604, 1627 (Humphreys); JA1532-1533, 1537-1539, 1541, 1543, 1545, 1547, 1550-51 (Figert).

[6] *Brocade Communications Systems, Inc. v. A10 Networks, Inc.,* 873 F.Supp. 2d 1192, 1219-20 (N.D. Cal. 2012), which HPA asserts is "on almost identical facts," expressly holds that the alleged "fast pace of development" is circumstantial, not direct, evidence.

> Q:    … My question was is it your opinion that Lessard copied the Grant Park design?
>
> A:    I was not asked to give an opinion about whether or not there was a copy made. I was asked to give an opinion about substantial similarity. So that's beyond the scope of what I was asked to provide, and I'll pass on giving a conclusion as to whether or not I think they copied it or not.

JA1532 (21:8-16).

Mr. Figert's declaration fails to genuinely dispute any material fact. JA8024. Lessard made the architects, and dozens of other witnesses, available for discovery. Mr. Jenkins and Mr. Lessard were identified as material fact witnesses on the copying issue.[7] Mr. Jenkins provided a detailed declaration, explaining how he created the Park Crest Two design.[8] HPA elected not to depose him and his declaration stands uncontested.

Lessard independently made the Park Crest Two design, using its prior knowledge of standard ideas, concepts, and features.[9] Humphreys has identified no direct evidence of copying.[10] HPA's corporate representative admits that the designs are different.[11] Apart from the nine asserted features, HPA also admits that

---

[7] JA168, JA176-177, JA186, JA908, JA915, JA925.

[8] JA1778-1782.

[9] JA1778, 1779 (Jenkins); JA1751 (Lessard); JA2049, 2064-65 (Carter); JA1786 (Greenstreet); JA2316-2334 (Gresham).

[10] JA1604, 1627 (Humphreys); JA1532-1533, 1537-1539, 1541, 1543, 1545, 1547, 1550-51 (Figert).

[11] JA1598-1615 (Humphreys).

all of the individual floor plans of the residential units are different— "They are different. They have plugged in different plans in our place. . . . They are different."[12] Having made these critical admissions, HPA cannot genuinely dispute the material facts.

Mr. Jenkins acknowledges that he received Penrose's November 3, 2010, email with a single-page copy of a Grant Park floor plan.[13] He disregarded it, and did not copy it. The undisputed facts show that it did not provide new or unique design information.[14] Mr. Jenkins was already aware of "dual core" designs.[15] When Mr. Jenkins was practicing in Miami, he knew of the Harbor Towers condominium and several other projects having this same, standard "dual core" feature in other existing building designs.[16]

The Park Crest Two project had languished for years since the 2008 recession, and Penrose was eager to get to work. This is one of the reasons why Penrose hired Lessard, a local architect with whom it had worked before and was already familiar with the Park Crest site having designed another residential building for Penrose. Lessard is located less than a mile from both Penrose and the

---

[12] JA1603(164:12-16). *See also*, JA1610(191:17-192:12) (11 vs 17 residences); JA1615(211:1-5) (none of the unit plans is identical); JA1616(216:7-12) (substituted floor plans).
[13] JA1778-1782.
[14] JA1778-1782.
[15] JA1778.
[16] JA1778-1782

Park Crest Two site. Penrose knew that Lessard could get the job done, on time and within budget.[17]

It is not enough for HPA to say it "disputes" the evidence of record. In order to avoid summary judgment, HPA was required to adduce evidence establishing a *genuine* dispute that the designs are substantially similar under this Court's extrinsic similarity test. It failed to do so. JA8039-8058.

### 2. The Nine Individual Features HPA Relies Upon to Establish Infringement Are Functional or Standard Features Not Protected by Copyright

After learning that it was not selected for the Park Crest Two project, HPA sued.[18] HPA contends that the Grant Park and Park Crest Two designs share nine features: (1) a high-rise residential building; (2) with two elevator cores connected by a fire or service corridor; (3) with direct access from the residential units to an elevator lobby; (4) consisting of a barbell-shaped floor plan; (5) with a mechanical/electrical room space at one end of the service corridor and a trash chute at the other end; (6) exit stairwells adjacent to the elevators; (7) corner units with diagonal entry access; (8) alternating vertical elements; and (9) projecting elements at the cornice at the roof line.[19]

---

[17] JA1736 (Gregg); JA1738 (McDonald); JA1743-1744 (McDonald).
[18] JA52.
[19] JA490(¶40); JA76(¶31); JA231(¶42).

HPA initially denied that any other architect had ever designed a high-rise residential building with these features.[20] Substantial evidence demonstrated that other architects had designed buildings containing these features.[21] These standard features were widely used years before HPA made the Grant Park design.[22]

For example, each of these features is present in the Harbor Towers condominium in Aventura, Florida, designed by architect Robert Swedroe and built in 1993, nine years *before* Grant Park.[23]

| | |
|---|---|
|  | Floorplan of Robert Swedroe's Harbor Towers Condominium (with dual core elevator lobbies highlighted in blue) Aventura, Florida |

JA1726-1727 (HPA 30(b)(6) Ex. 10, 11) (highlighting added). HPA is claiming copyright in a combination of these same nine functional and standard features that were used in Harbor Towers and a number of other buildings.[24] "Apartment buildings featuring multiple elevator cores with apartments clustered around the

---

[20] JA1581(15:4-16:7), 1589(66:11-22), 1617(233:15-20) (Humphreys).
[21] JA1519-1620 (Humphreys); JA1393-1394 (Swedroe); JA2057-2058 (Carter); JA1793-1794 (Greenstreet); JA2317-2334 (Gresham).
[22] JA1763 (Swedroe); JA1778 (Jenkins); JA179-1794 (Greenstreet).
[23] JA1763 (Swedroe); JA1619-1620, 1623(258:6-10) (Humphreys).
[24] JA1619-1620 (Humphreys); JA2055-2056 (Carter); JA1793-1794 (Greenstreet); JA2316-2334 (Gresham).

core can be seen in <u>thousands</u> of buildings, both historic and more recent." JA2319 (emphasis in original). Various buildings, including a 1902 building in New York City, include these individual standard features. JA2319-2320. The evidence of record is uncontested that these nine concepts are functional or standard features, used by architects.[25]

### 3. HPA Did Not Identify Evidence Establishing a Genuine Issue of Material Fact That the Designs are Substantially Similar

To infer copying, HPA must establish: (1) access to the Grant Park design; and (2) that the Park Crest Two design is substantially similar to original, protectable features of the Grant Park design.[26] For purposes of summary judgment, the Park Crest Parties apart from Clark, did not dispute access. HPA must genuinely dispute that the designs are substantially similar. Instead, HPA concedes that they are different.[27]

#### a) The Idea of a High-Rise Residential Building Is Expressed Differently

Grant Park has 27 floors; Park Crest Two has 19 floors.[28]

---

[25] JA1778 (Jenkins); JA1757 (Swedroe); JA1619-1620 (Humphreys); JA2049-2050 (Carter); JA1786, 1793-1794 (Greenstreet); JA2316-2334 (Gresham).

[26] *Feist,* 499 U.S. at 361; *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010).

[27] JA1598-1616 (Humphreys); JA1536-1552 (Figert).

[28] JA1598 (Humphreys); JA1535, 1553 (Figert).

| 27 Floors | 19 Floors |
|---|---|
|  |  |
| Grant Park | Park Crest Two |

JA1558 (Figert Ex. 20) (highlighting added). The two buildings look substantially different. Grant Park is larger and more massive. Grant Park is "traditional;" Park Crest Two is modern, with substantial glass on the front façade. The windows, balconies, and façades are different.[29]

> **b)**    **The Idea of Having Two Elevator Lobbies Connected by a Fire or Service Corridor Is Expressed Differently**

Grant Park has two substantially rectangular elevator lobbies (highlighted in green) for both passenger and freight elevators; Park Crest Two has two H-shaped elevator lobbies for only the passenger elevators.[30]

---

[29] JA1599-1600(149:6-155:10), JA1606(174:15-176:4), JA1605(172:13-173:8), and JA 1606-1607(176:22-178:6) (Humphreys); JA1550(160:20-161:2, 161:17-21), JA1551(162:16-25, 163:1-4) (Figert); JA2062 (Carter); JA1798-1799 (Greenstreet); JA2328-2331 (Gresham).

[30] JA1609-1610(189:2-191:16) (Humphreys); JA153(94:15-95:6), JA1536(96:17-

| Right Elevator Lobby: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

JA1560 (Figert Ex. 20). Grant Park has five elevators arranged in two cores: two passenger elevators and a service elevator in one core, and two passenger elevators in a second core; Park Crest Two has five elevators arranged in three cores: two passenger elevators in one core, two passenger elevators in a second core, and a service elevator in a third core.[31] Grant Park has a fire enclosure vestibule immediately in front of each bank of elevators; Park Crest Two has no vestibule or fire enclosure.[32] Further, the Grant Park service elevator (highlighted in orange) is in the passenger elevator bank and is visible from the elevator lobbies; the Park

---

19), JA1538(107:16-108:1), JA1553(171:20-25) (Figert); JA2059-2060 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

[31] JA1607(179:8-181:12) (Humphreys); JA1539(110:1-9) (Figert); JA2060 (Carter); JA1797 (Greenstreet); JA2325-2326 (Gresham).

[32] JA1609(188:1-12) (Humphreys); JA1553(172:1-18) (Figert); JA2061 (Carter); JA2326 (Gresham).

Crest Two service elevator is not.[33]  Rather, it is in the service corridor, out of view

from the elevator lobbies.[34]

| Freight Elevator Location: | |
| --- | --- |
|  | |
| Grant Park | Park Crest Two |

JA1561 (Figert Ex. 20). A fire or service corridor is functional. It is required to

connect the exit stairways by a corridor to provide emergency exit access to two

stairways.[35] Both designs have this functional feature because it is required by

building and fire codes.[36]

> c)    **The Idea of "Direct Access" is Expressed Differently**

The left-hand elevator lobby (highlighted in green) illustrates how

---

[33] JA1608(185:9-14) (Humphreys); JA1541(118:5-119:1) (Figert); JA2061
(Carter); JA2326 (Gresham).
[34] JA1608(185:9-14) (Humphreys).
[35] JA1608-1609(185:20-186:22) (Humphreys); JA1538(108:2-12), JA1539(112:9-
13) (Figert); JA1793-1794 (Greenstreet); JA2318-2324 (Gresham).
[36] *Id*.

differently the concept of direct access is expressed in the two designs.

| Left Hand Elevator Lobby: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

JA1559 (Figert Ex. 20). The Grant Park lobbies are substantially rectangular and the residential units open onto a common lobby. There are clear lines of sight to most if not all of the other entrance doors on the same lobby.[37] In contrast, Park Crest Two has H-shaped elevator lobbies with the entrance doors at the ends of the short H-shaped corridors.[38]  Lines of sight to most of the entrance doors are blocked.

### d)      The Floor Plans Are Not Substantially the Same Shape

The evidence of record does not support HPA's characterization that Grant

---

[37] JA1596(112:3-22) (Humphreys); JA1541(118:15-17) (Figert).
[38] JA1612(200:2-14) (Humphreys); JA1540-1541(116:17-118:23) (Figert).

Park is barbell-shaped.[39] Rather, Grant Park is substantially rectangular in shape, with modest protrusions along the front and back walls.[40] Grant Park has a stepped or zig-zag shape, with protrusions out from the front façade offset by indentations on the rear.[41] The middle is not narrower than the ends.

| Shape: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

JA1568, 1569 (Figert Ex. 20).

In contrast, the Park Crest Two floor plan is more dramatically barbell-shaped, with a substantially narrower waist.[42] The Park Crest Two floor plan has protrusions outward from both front and back façades opposite one another, a substantially narrower waist in the middle, and a cutout at the rear right corner. *Id.*

---

[39] JA2060 (Carter); JA1797 (Greenstreet).
[40] JA1611(194:5-17), JA1602(160:6-22) (Humphreys); JA1544(134:18-23) (Figert); JA2060 (Carter); JA1797 (Greenstreet); JA2325 (Gresham).
[41] JA1611(194:13-17) (Humphreys).
[42] JA1602(160:6-122), JA1611(194:5-17) (Humphreys); JA1544(134:18-23) (Figert); JA2060 (Carter); JA1797 (Greenstreet); JA2325(Gresham).

### e) Mechanical/Electrical Rooms and Trash Chutes are Functional or Standard Features and Are Expressed Differently

Mechanical/electrical rooms and trash chutes (highlighted in yellow) are standard features.[43] The Grant Park design places the mechanical/electrical room and trash chute in the service corridor on the front side of the building; the Park Crest Two design places them in the service corridor on the back side of the building.[44]



| Mechanical and Trash Room Placement: | |
|---|---|
| Grant Park | Park Crest Two |

JA1570 (Figert Ex. 20) (highlighting added). (Excerpted from Exhibits 3 and 7 to HPA 30(b)(6) Dep.).

---

[43] JA1584(47:19-22), JA1624(301:18-22) (Humphreys); JA1544-1545(137:22-139:2), JA1545(140:15-19) (Figert); JA2060 (Carter); JA1794 (Greenstreet).
[44] JA1624(298:18-299:8) (Humphreys); JA1544-45(136:25-137:7) (Figert); JA2060 (Carter).

### f)      Exit Stairwells Are Functional and Are Expressed Differently

Exit stairwells (highlighted in red) are also functional and are required by code.[45] The Grant Park exit stairwells are directly behind each elevator bank on the same side of the elevator lobby as the elevators.[46]  Users must walk behind the elevators to access the stairs.[47] The stairways abut the back of the elevator banks and are not separated from the elevators by a firewall.[48]

| Emergency Stairways: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

---

[45] JA1584(50:7-18), JA1585(50:7-18), JA1624(301:18-22) (Humphreys); JA1545(141:22-25) (Figert); JA2056 (Carter); JA 1794 (Greenstreet).

[46] JA1608(182:19-183:4), JA1608(184:11-17) (Humphreys); JA1546(144:19-145:6), JA1547(146:2-11) (Figert); JA2061 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

[47] JA1608(184:11-14) (Humphreys); JA1546(144:19-145:6) (Figert); JA2061 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

[48] JA1546(144:19-145:6) (Figert); JA2061 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

JA1565 (Figert Ex. 20). In contrast, the Park Crest Two stairwells are not behind the elevators. They are across the elevator lobby on the opposite side from the elevators.[49] An expanse of horizontal floor slab separates the stairwells from the elevators.[50] Placing the stairways opposite the elevator lobbies required the Park Crest Parties to build a separate fire wall, at substantial additional expense.[51]

### g)   The Concept of Diagonal Entrance Hallways is Expressed Differently

The Grant Park entrance hallways (highlighted in yellow) on three of the corner units is diagonal.[52] Harbor Towers also had diagonal entryways.[53] In contrast, the entry hallways on all four of the Park Crest Two corner units are parallel to the façade, the long axis, of the building and are not diagonal. They are followed by a short diagonal internal hallway segment in the interior of some but not all of the units.[54]

---

[49] JA1608(182:19-183:4), JA1608(184:11-17) (Humphreys); JA1546(144:19-145:6) (Figert); JA2061 (Carter); JA2326 (Gresham).

[50] JA1546(143:9-12) (Figert); JA2061 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

[51] JA1546(144:19-145:6), JA1547(140:6-13) (Figert).

[52] JA1596(112:3-22) (Humphreys); JA1547(147:6-12) (Figert); JA2061(Carter); JA1795-1799 (Greenstreet); JA2332-2334 (Gresham).

[53] JA1620(246:20-22) (Humphreys); JA2061 (Carter); JA1798 (Greenstreet).

[54] JA1612-1614(201:17-206:20), JA2061 (Carter); JA1795-1799 (Greenstreet); JA2332-2334 (Gresham).

| Orientation of Entryways: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

JA1571 (Figert Ex. 20) (highlighting added). The diagonal entrance hallway gives

Grant Park unobstructed sight lines from the entrance doorways, through the units,

to the outside.[55] Park Crest Two lacks this feature.[56]

### h) The Concept of Vertical Elements on the Façades Is Expressed Differently

The façades of high-rise buildings have vertical features.[57] These features

make buildings appear taller.[58] HPA identifies these as the yellow highlighted

portions of the Grant Park façade.[59]

---

[55] JA1596(112:3-22) (Humphreys); JA2061 (Carter).
[56] JA1612(200:2-14) (Humphreys); JA2062 (Carter); JA1795-1797 (Greenstreet); JA2332-2334 (Gresham).
[57] JA1629(379:19-380:6) (Humphreys); JA2062 (Carter); JA1795-1799 (Greenstreet); JA2328-2331 (Gresham).
[58] JA1593(90:13-21) (Humphreys).
[59] JA1586-1587(57:19-59:22) (Humphreys).

Façades:



| Grant Park | Park Crest Two |

JA1572 (Figert Ex. 20). The Grant Park façade has two vertical portions protruding from the front façade of the building and extending the entire height of the façade from ground to roof, arched Palladian windows on the fourth and fifth floors, and two sets of two-story four-pane windows at the top.[60] The remainder of the protruding vertical portion of the Grant Park façade consists of two columns of four-pane windows. [61]

In contrast, Park Crest Two has no such vertical features extending the height of the façade. Park Crest Two instead has four columns of modern three-pane windows on each side of the building, extending from the fourth to the

---

[60] JA1604(166:2-10), 1587(58:20-59:19), 1587(59:4-7) (Humphreys).
[61] JA1591(85:17-86:3) (Humphreys).

seventeenth floors (red and blue above).[62]  The Park Crest façade is substantially

glass, presenting a modern appearance.[63] Grant Park, in contrast, is more

traditional.[64]

### i) The Concept of a Standard Cornice Feature is Expressed Differently

Projecting cornices have been standard features of buildings for millennia.[65]

They are not original to HPA.[66] The Grant Park cornices are expressed as a series

of parapets—left and right parapets at the top of the roofline connected by a higher

central parapet.[67] This arrangement forms a "wedding cake" section in the center.[68]

---

[62] JA1549(156:19-157:6 158:19-159:8) (Figert); JA2062 (Carter); JA1795-1799 (Greenstreet); JA2328-1331 (Gresham).

[63] JA1599-1600(149:6-150:17) (Humphreys); JA1550(160:20-161:2, 161:17-21), JA1551(162:16-25), JA1551(163:1-4) (Figert); JA2062 (Carter); JA1795-1799 (Greenstreet); JA2328-2331 (Gresham).

[64] JA 1550-51(160:23-164:2) (Figert); JA1795-1799 (Greenstreet); JA2328-2331 (Gresham).

[65] JA8053; JA1629(379:19-382:3) (Humphreys); JA1552(169:5-13), JA1552(169:23-170:1) (Figert); JA2049, JA2056 (Carter); JA1793-1794 (Greenstreet).

[66] JA1552(169:17-19) (Figert).

[67] JA1598-1599(144:21-149:5) (Humphreys).

[68] JA1590(70:2-71:17) (Humphreys).

In contrast, Park Crest Two has no elevated central section.[69] The crown at the top steps up at the two wings and down in the center.[70]

| Cornices: | |
|---|---|
|  | |
| Grant Park | Park Crest Two |

JA1558 (Figert Ex. 20). Grant Park has three cornice features, one at the roofline, a second on the wings, and a third at the higher central section; Park Crest Two has just one cornice, on the wings.[71]

---

[69] JA1599(148:7-149:5) (Humphreys); JA1552(166:13-167:11), JA168:15-18), 169:2-4) (Figert); JA2062 (Carter); JA1795-1799 (Greenstreet); JA2331-2332 (Greenstreet).

[70] JA1598(143:9-145:21) (Humphreys).

[71] JA1587(61:2-62:6), JA1599(147:8-148:1) (Humphreys); JA1552(166:13-167:11), 1552(168:15-18, 169:2-4) (Figert); JA2062 (Carter); JA1795-1799 (Greenstreet); JA2331-2332 (Gresham).

| Cornices: |
|---|
|  |

| Grant Park | Park Crest Two |
|---|---|

JA1573 (Figert Ex. 20).

HPA contends that the district court erred in not inferring copying based on these nine functional and/or standard features. The uncontested evidence of record, including HPA's own testimony, is that each is either functional and/or an individual standard feature. Any similarity does not extend beyond unprotectable ideas or concepts. By the admissions of HPA's corporate representative and expert, each of these unprotectable concepts is expressed differently in the two designs.

In addition, the overall arrangement and composition of the spaces and elements of the two designs are not substantially similar.[72] HPA identified no

_____

[72] JA8039-8058; JA2049 (Carter); JA17895-1799 (Greenstreet); JA2317-2318,

evidence challenging the experts's reports.[73] No reasonable jury could find that the designs are substantially similar. JA8060.

## III.    STANDARD OF REVIEW

HPA contends that all issues are reviewed *de novo*. HPA's Opening Br. at 15-16. Yet, several of the issues raised by HPA are reviewed only for abuse of discretion. This Court reviews a grant of summary judgment *de novo*.[74] In contrast, this Court reviews the admissibility of evidence only for abuse of discretion, overturning an evidentiary ruling only if it is "arbitrary and irrational."[75] This abuse of discretion standard applies even where the admission of expert reports or declarations results in summary judgment.[76]

It is not sufficient for HPA to contend that it "disputes" the evidence presented by the Park Crest Parties. HPA must present admissible evidence establishing a ***genuine dispute of material fact***.[77] A genuine dispute cannot be established based on conclusory declarations.[78] Nor can it be established through

---

JA2330 (Gresham).

[73] JA1554(199:13-22), JA1555(204:1-11), JA1555(204:12-24) (Figert).

[74] *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578 (4th Cir. 2013).

[75] *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011).

[76] *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Creekmore v. Maryview Hosp.*, 662 F.3d 686, 690 (4th Cir. 2011) (citing *United States v. Grimmond*, 137 F.3d 823, 831 (4th Cir. 1998)).

[77] Fed. R. Civ. P. 56.

[78] *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *see Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 541, 542, 546-47 (4th Cir. 2004).

declarations that fail to analyze the relevant facts.[79] Nor can it be established through declarations that contradict the sworn testimony of that party's corporate representative's or expert witness.[80]

## IV.    SUMMARY OF ARGUMENT

The district court correctly determined that HPA failed to establish a genuine issue that protectable features of the two designs are not substantially similar under this Court's extrinsic similarity test. At best, HPA has shown that both designs include some of the same unprotectable ideas or concepts. More is required. HPA must establish a genuine dispute that the Park Crest Two design is substantially similar to protected features of the Grant Park design.[81] It has not done so.

Thus, as a matter of law, HPA's copyright infringement claim must be dismissed as to each of the Park Crest Parties. In making this determination, the district court correctly reviewed each of the elements of the Grant Park work that HPA claims were copied, and analyzed each under appropriate copyright law principles established by this Court. JA8038-8058.

HPA makes three arguments on appeal: (1) the district court did not correctly apply the summary judgment standard; (2) the district court improperly admitted and relied upon the Park Crest Parties' expert reports and declarations;

---

[79] *Bouchat v. Balt. Ravens Foot Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).
[80] *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 422 (4th Cir. 2014); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).
[81] *Feist*, 499 U.S. at 361; *Universal Furniture*, 618 F.3d at 435.

and (3) the district court misinterpreted and misapplied the substantive copyright law. Each is wrong. The district court correctly applied the summary judgment standard concluding that there is no genuine dispute of material fact regarding the lack of substantial similarity between the Grant Park and Two Park Crest designs. JA 8038-8058. The district court did not abuse its discretion in considering the Park Crest Parties' uncontested sworn expert reports. And, the district court correctly followed this Circuit's well-established two-part test for substantial similarity, which requires a threshold "extrinsic" similarity determination. JA8038-8058.

The district court also correctly granted summary judgment in Clark's favor for lack of access to the copyrighted work. JA8034-8035. HPA contends that it provided direct evidence of Clark's access to the copyrighted Grant Park work but the record below contains no such evidence and the district court correctly granted summary judgment for Clark.

## V.    ARGUMENT

### A.    The District Court Correctly Followed Summary Judgment Procedure

#### 1.    The District Court Properly Exercised Its Discretion When Considering the Evidence of Record

Rule 56 provides for summary disposition where "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."[82] There is no genuine dispute of material fact either where the facts are expressly undisputed or where "there is an absence of evidence to support the nonmoving party's case."[83] A nonmoving party cannot defeat a motion for summary judgment by relying on "conclusory allegations, mere speculation" or "the building of one inference upon another."[84] The court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[85]

The district court carefully considered all of the motions submitted to it and found, on some of them, that "Humphreys has proffered sufficient evidence to create a triable issue of fact." JA8031-8034. On others, on which it granted summary judgment, the district court expressly examined and reviewed the evidence of record and found none. JA8036-8038.

HPA's reliance on *Tolan*[86]is misplaced. HPA's Opening Br. at 21-23. *Tolan* involved an excessive force claim against a police officer. The lower court granted summary judgment and the Fifth Circuit affirmed. The Supreme Court reversed, noting that the record contained competent evidence, namely, testimony from eyewitnesses, the victim, and the officer, of material facts contradicting the Fifth

---

[82] Fed. R. Civ. P. 56.
[83] *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).
[84] *Dash*, 731 F.3d at 311.
[85] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).
[86] *Tolan v. Cotton*, 134 S.Ct 1861 (2014).

- 27-

Circuit's conclusions.[87] These genuine issues of material fact precluded summary judgment.[88]

HPA's reliance on *McAirlaids*[89] is similarly misplaced. The issue in *McAirlaids* is whether an embossing pattern on a textile was functional and, therefore, not subject to trade dress protection. This Court noted that functionality is a fact issue usually reserved for a jury.[90] HPA equates "functionality" in *McAirlaids* with extrinsic similarity here. The two are different. While functionality is a fact issue typically reserved for the jury, the extrinsic similarity issue is frequently decided on summary judgment.[91]

HPA contends that its declarations establish a genuine dispute of fact. A dispute is not genuine where a party is impeaching the testimony of its own witnesses,[92] or relying on conclusory legal arguments.[93] An expert affidavit can create a genuine dispute of fact only if it describes both the "factual basis and the process of reasoning" that make its conclusions viable.[94] Mr. Figert's affidavit

---

[87] *Id*. at 1866-67.

[88] *Id*. at 1868.

[89] *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307 (4th Cir. 2014).

[90] *Id*. at 310.

[91] *Universal Furniture*, 618 F.3d at 436 (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999)); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006).

[92] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

[93] *Dash*, 731 F.3d at 311.

[94] *Id*. at 321 (citation omitted).

lacks such an explanation and is insufficient to create disputed issues of fact.[95] Mr. Figert's declaration, report, and deposition provide no factual basis for his conclusions and opinions on the ultimate legal issues. JA8046.

HPA cites *Blair*[96] as requiring the district court to accept all statements of HPA's declarants as true. *Blair* says no such thing. In *Blair*, the issue was whether a background check would have revealed an employee's criminal past, and, if it had, whether the employee would have been hired. The plaintiff provided expert testimony about the kinds of information that are returned by background checks and presented fact witness testimony about what would have happened if the criminal past had been revealed. Likewise, in *Monterey Bay*,[97] the expert testimony established a genuine issue where it expressly described the factual evidence, and not mere conclusions. The *T-Peg*[98] and *Swirsky*[99] cases relied upon by HPA are distinguishable for the same reasons. Here, in contrast, HPA's expert report contains only conclusions, not facts. JA8046. Mr. Figert's conclusory and unsupported opinion testimony does not genuinely dispute any material fact. JA8046.

---

[95] *Id*. ("[A] bare ultimate expert conclusion [is not] a free pass to trial every time that a conflict of fact is based on expert testimony.") (citation omitted).
[96] *Blair v. Public Defender Services, Inc.,* 386 F.3d 623, 629 (4th Cir. 2004).
[97] *Monterey Bay Homes, LLC v Chambers*, 11 F. Supp.3d 570, 579-80 (D.S.C. 2014).
[98] *T-Peg, Inc v. Vermont Timberworks, Inc.,* 459 F.3d 97, 116 (1st Cir. 2006).
[99] *Swirsky v Carey*, 376 F.3d 841, 846-49 (9th Cir. 2004).

HPA contends that summary judgment was improper simply because it disputed certain of the facts asserted by the Park Crest Parties. HPA's Opening Br. at 26. Rule 56 and the Local Rules require far more than HPA's contentions.[100] HPA's arguments,[101] however, identify no contradictory facts. They are representations by HPA's counsel and based on HPA's same argument that the Park Crest Parties' expert reports were not admissible.

## 2. The District Court Properly Admitted the Park Crest Parties' Expert Reports and Declarations

The admissibility of evidence is reviewed only for abuse of discretion.[102] A party making or opposing a summary judgment motion may cite to materials in the record including, "depositions, documents, electronically stored information, affidavits or declarations" and the like.[103] If the opposing party believes that such materials "cannot be presented in a form that would be admissible in evidence," that party must state an objection to the evidence.[104]

The 2011 amendments eliminated "the unequivocal requirement that documents submitted in support of a summary judgment motion must be

---

[100] Fed. R. Civ. P. 56.

[101] HPA cites *Sartor v. Arkansas Natural Gas, Corp.*, 321 U.S. 620 (1944), and *Hennon v. Kirklands, Inc.*, No. 94-2595, 1995 U.S. App. LEXIS 22582, *9-11 (4th Cir. 1995), yet, fails to identify any disputed fact that would be material under either case.

[102] *Cole*, 631 F.3d at 153.

[103] Fed. R. Civ. P. 56(c)(1)(A).

[104] *Id*. at 56(c)(2).

authenticated." *Id*. Instead, Rule 56 allows consideration of all evidence, including expert reports, so long as it can be presented in an admissible form at trial. An appropriate evidentiary objection under Rule 56 is not that the material "has not" been submitted in admissible form but, rather, that it "cannot" be.[105]

The Park Crest Parties submitted expert reports that describe in detail the underlying facts and reasoning that the two works are not substantially similar. HPA does not contend that the information in these expert reports cannot be presented in an admissible form at trial. Nor did HPA offer substantive objections to the experts' qualifications. Rather, HPA's sole objection is that the Park Crest Parties failed to submit sworn declarations by the experts when the reports were initially submitted with the summary judgment motions. JA4162. The district court properly allowed the Park Crest Parties to submit such declarations.[106]

The Park Crest Parties responded to HPA's objection by providing sworn declarations from the experts attesting to the truth of their reports, and to the

---

[105] *Foreword Magazine v. Overdrive, Inc.*, Docket No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011).

[106] *See Foreword Magazine* 2011 WL 5169384 at *2 ("[T]he amendment replaces a clear, bright-line rule ('all documents must be authenticated') with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method for doing so at trial."); Fed. R. Civ. P. 56(e)(1) (court may allow an opportunity to properly support or address a fact even where that fact was not initially properly supported).

- 31-

accompanying exhibits and illustrations.[107] The experts are available to testify live at trial regarding the information in their reports. All of the experts were available for deposition but HPA elected not to depose any of them.

Courts routinely consider expert testimony on summary judgment, including when determining extrinsic similarity in copyright cases.[108] The cases on which HPA relies for the contrary proposition are inapposite.

In *Mahnke*, the court, considering pretrial *limine* motions, concluded that CVs and expert reports would be inadmissible at trial but did not exclude expert testimony reflecting the contents of the reports.[109] The court in *Mahnke*, did not refuse to consider expert reports on summary judgment.[110] Both *Schaffer*[111]and *Siegler*[112] involved unsworn reports that were never corrected.  And in *N5*,[113] the court considered whether plaintiff who failed to hire its own expert could submit

---

[107] JA6367; JA6392-6393; JA6425-6426.

[108] *See Universal Furniture*, 618 F.3d at 435-36 (expert testimony may be relevant to the court's determination of extrinsic similarity); *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (noting that extrinsic similarity is shown typically with the aid of expert testimony).

[109] *Mahnke v. Washington Metro. Area Transit Auth.*, 821 F. Supp.2d 125 (D.D.C. 2011).

[110] *Id*. at 155.

[111] *Schaffer v. CSX Transp., Inc.*, 462 F. App'x 597 (6th Cir. 2012).

[112] *Siegler v. Am. Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008).

[113] *N5 Techs. v. Capital One N.A.*, No. 1-13-cv-386, 2014 WL 354425 (E.D. Va. Jan. 30, 2014).

defendant's expert report in its case. The court correctly held that it could not

because the plaintiff could not compel defendant's expert to testify at trial.[114]

Because the Park Crest Parties' expert reports were both sworn to in

declarations filed in response to HPA's objection and the content of the reports

would be admissible through the experts's testimony at trial, the district court did

not abuse its discretion when it considered these expert reports.[115]

### B.    There is No Direct Evidence of Copying

HPA contends that the district court disregarded direct evidence of copying.

HPA's Opening Br. at 52-53. It did not because there was no direct evidence of

copying. JA8026. HPA's corporate representative and expert were both asked

whether or not HPA had any evidence of copying. They both conceded that HPA

has no direct evidence of copying.

> Q:    In fact, you don't know if he copied it at all, do you? You
> weren't there. Correct?
>
> **A:    I was not there.**

JA1604(166:20-22) (Humphreys 30(b)(6) Dep.).

> Q;    Okay. You don't have any information, Humphreys does
> not have any information regarding whether or not John
> Jenkins copied the Grant Park design, does it, in fact
> copied it? You don't know, do you?
>
> **A:    No. I don't know.**

---

[114] *Id*. at *8.
[115] *Cole*, 631 F.3d at 153; *Creekmore*, 662 F.3d at 690; *Grimmond*, 137 F.3d at 831.

> Q:    You have no access to any information about how he
>        prepared the designs for Park Crest Two, do you?
>
> **A:    No. I do not.**

JA1627(372:13-22) (Humphreys 30(b)(6) Dep.). Instead HPA based its case on an

inference of copying based on access and substantial similarity.[116] Similarly,

HPA's expert witness, Daniel Figert, conceded that he had no direct evidence of

copying.[117]

> Q:    …My question was is it your opinion that Lessard copied
>        the Grant Park design?
>
> A:    I was not asked to give an opinion about whether or not
>        there was a copy made. I was asked to give an opinion
>        about substantial similarity. So that's beyond the scope of
>        what I was asked to provide, and I think I'll pass on
>        giving a conclusion as to whether or not I think they
>        copied it or not.

JA1532-1533(21:8-22:11) (Figert). Nor is the authority HPA cites for this

argument applicable.

*Kramer*[118] was a software case and, unlike this case, did involve direct

evidence of copying:  a hidden legend, "9-24-80 M. Kramer Mfg.," embedded in

plaintiff, M. Kramer Manufacturing Co. Inc.'s software program, was found in the

---

[116] JA1627(373:16-374:11) (Humphreys 30(b)(6) Dep.).
[117] JA1537(101:15-24) (fire corridor and direct access); JA1538 (107:16-108:1)
(lobbies); JA1539(112:9-19) (fire corridor); JA1541(119:2-10) (direct access);
JA1543(130:130:11-14) (barbell-shaped); JA1545(140:6-13)
(mechanical/electrical rooms and trash room); JA1547(146:2-11) (exit stairs);
JA1547(147:8-22) (diagonal entry hallways); JA1550(160:160:9-15) (vertical
elements); JA1551(162: 22-25) (façades).
[118] *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421 (4th Cir. 1986).

- 34-

defendants' program.[119] Similarly, in *Rogers*,[120] there was direct evidence that the defendant gave a copyrighted photograph to sculptors with express instructions to copy the sculpture "as per photo."[121] No such direct evidence is identified by HPA. Nor could it be.

Rather, HPA relies on circumstantial evidence, namely, Mr. Figert's opinions. HPA's Opening Br. at 52. Access is not disputed on this appeal with respect to the Park Crest Parties, with the exception of Clark. HPA has identified nothing in Lessard's sketches even remotely comparable to the legend in *Kramer*. The Figert declaration opines on only an unprotectable idea or concept, an alleged "preconceived notion" of "compact elevator lobbies." Concepts, whether preconceived or not, are not protectable under copyright law.[122] And, "compact elevator lobbies" is not even one of the individual features asserted by HPA. Mr. Figert's declaration fails to address the material issue—substantial similarity of the nine asserted features and of the arrangement and composition of elements as a whole—let alone establish a genuine dispute.

Citing *Brocade*,[123] HPA contends that this is direct evidence of copying. Yet *Brocade* expressly holds that opinion testimony that the accused design was done

---

[119] *Id*. at 443.
[120] *Rogers v. Koons*, 960 F.2d 301, 307 (2nd Cir. 1992).
[121] *Id*. at 307.
[122] 17 U.S.C. §102(b) (2012).
[123] *Brocade Communications Systems, Inc. v. A10 Networks, Inc*., 873 F. Supp.2d 1191 (N.D. Cal. 2012).

too quickly is circumstantial, not direct, evidence.[124] There is simply no direct evidence of copying of record. JA8024.

### C. The District Court Properly Granted Summary Judgment of Noninfringement

The district court's summary judgment is based on the lack of any genuine issue whether the designs are substantially similar under this Court's extrinsic test. JA8060.

### 1. The District Court Correctly Applied the Copyright Law

HPA contends that the district court imposed a heightened standard of infringement for an architectural work—"filtering out" unprotectable features, separating features, and viewing each in isolation. HPA's Opening Br. at 28-32. But the district court expressly analyzed the overall arrangement of features, as a whole, including each of the asserted features of Grant Park design, in spite of the fact that they are functional or individual standard features. JA8056-8057.

HPA is correct that the Park Crest Parties encouraged the district court to consider HPA's architectural copyright "thin" and to apply a "supersubstantial similarity" standard.[125] The district court, however, declined to do so. JA8039-8043.

---

[124] *Id.* at 1219.

[125] HPA argues that this Court's unpublished decision in *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 496 Fed. App'x 314 (4th Cir. 2012) (*Ross I*), overrules the "supersubstantial similarity" requirement. Neither *Ross I* nor

The district court did not "filter out" anything. Rather, it followed Supreme Court and Fourth Circuit precedent, and the statutory requirements. The Copyright Act provides, in pertinent part:

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. ***The work*** includes the overall form as well as the arrangement and composition of spaces and elements in the design, but ***does not include individual standard features***.[126]

Standard features include: "common windows, doors, and other staple building components."[127] This requirement is consistent with the fundamental principle that copyright does not extend to ideas or concepts:

> (b) ***In no case does copyright protection*** for an original work of authorship ***extend to any idea,*** procedure, process, system, method of operation, ***concept,*** principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.[128]

Extending exclusive rights to ideas or concepts, or functional or individual standard features would impede, rather than promote, the progress of architectural

---

*Universal Furniture* so holds. Rather, *Universal Furniture* applies the two-part extrinsic/intrinsic test; *Ross Builders* holds that this same test applies to architectural works. The Park Crest Parties are not aware of any decision of this Court resolving whether architectural copyright is "thin" or requiring "supersubstantial similarity." Nor is any such holding necessary to affirm the district court's summary judgment.

[126] 17 U.S.C. § 101 (emphasis added.)

[127] H.R. Rep. No. 101-735 (1990) *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949.

[128] 17 U.S.C. § 102(b) (emphasis added).

- 37-

innovation."[129] Similarly, the Copyright Act also does not protect "standard configurations of spaces,"[130] or design elements that are functionally required.[131]

HPA also contends that the district court imported patent law concepts of "prior art" into its assessment of originality. HPA's Opening Br. at 32-38. The terms "prior art," "novel," and "patent" appear nowhere in Judge Ellis's decision. JA8011-8079. The district court did not hold that HPA's Grant Park design is invalid, for lack of originality or otherwise. JA8027-8029. The Park Crest Parties did not move for summary judgment of invalidity, JA7813, and the district court did not decide this issue, JA8027-8029.

Nor are HPA's arguments on "individual" features persuasive. HPA's Opening Br. at 41-43. HPA, not the district court, identified these nine individual features and asserted that they establish infringement.[132] In spite of HPA's dogged focus on these nine individual standard features, the district court properly analyzed the overall arrangement and composition of the spaces and elements, as a whole. JA8056-8057.

Nor is there any evidence of record genuinely disputing that these nine features are functional and individual standard features. HPA's Opening Br. at 43-

---

[129] *Id*.

[130] 37 C.F.R. § 202.11(d)(2) (2014).

[131] H.R. Rep. No. 101-735 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6951-52.

[132] JA52; JA76; JA231; JA477.

51. HPA's argument regarding "standard" simply rehashes is misdirection regarding "prior art." HPA's Opening Br. at 41. Nor do the declarations of Messers. Hunt, Lux, and Figert that the Grant Park deign is "unique" establish any genuine dispute that these features are functional or standard. A witness attesting to their own ignorance of facts is not sufficient to genuinely dispute the facts propounded by the movant.[133]

HPA's "functional" arguments do little more than repackage its "filtering out," "prior art," and invalidity arguments. HPA's Opening Br. at 44-51. Whether or not architectural works are governed by the same "separability" test as "PGS" works is not an issue on this appeal. The district court applied no such test. The phrases "separability" and "PGS" appear nowhere in the district court's decision. Instead, the district court expressly analyzed the overall arrangement and composition of spaces and elements as a whole. JA8056-8057.

HPA recognizes that these nine individual standard features can be arranged in different ways. HPA's Opening Br. at 48. HPA's corporate representative and expert both testified that these features are, in fact, arranged differently in the two designs.[134] The district court was not required to accept HPA's bald statement that it "disputes" certain facts. And HPA cannot resist summary judgment by relying on

---

[133] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.
[134] JA1604, 1627 (Humphreys); JA1532-1533, 1537-1539, 1541, 1543, 1545, 1547, 1550-51 (Figert).

- 39-

"conclusory allegations, mere speculation" or "the building of one inference upon another."[135] Rather, HPA must identify admissible evidence sufficient to generate a genuine dispute of material fact.[136] It has not done so.

### 2. The District Court Properly Applied This Court's Extrinsic Similarity Analysis

The extrinsic similarity test analyzes both the ideas and the expression of those ideas in each of the works.[137]

The only relevant extrinsic similarities are those that are original and protectable by copyright.[138] A court must determine whether the defendant allegedly copied "protected elements" of the plaintiff's work.[139] Even where there is a valid copyright in the work as a whole, and the similarities could have resulted from copying, there can be no infringement where the allegedly copied elements are not protectable under copyright law.[140] Courts conducting an extrinsic analysis of substantial similarity of architectural works must examine the specific features of the work that are allegedly copied. There is infringement only if these features

---

[135] *Dash*, 731 F.3d at 311.

[136] *Celotex*, 477 U.S. at 325.

[137] *Universal Furniture*, 618 F.3d at 435-36 (citing *Apple Computer v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)).

[138] *Feist*, 499 U.S. at 361; *Universal Furniture*, 618 F.3d at 437.

[139] *Ale House Mgmt, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000).

[140] *Feist*, 499 U.S. at 361; *Attia v. Society of New York Hosp.*, 201 F.3d 50, 55 (2d Cir. 1999) ("[E]ven assuming…that the similarities result from copying, we conclude there was no infringement, because the similarities do not go beyond the concepts and ideas contained in Plaintiff's drawings.").

are both protectable and are substantially similar to those elements in the copyrighted work.[141] HPA's assertion that the district court erred by examining the individual elements, HPA's Opening Br. At 34-36, contradicts Fourth Circuit and Supreme Court precedent.

### D.    The Park Crest Two Design Is Not Substantially Similar to Protectable Features of the Grant Park Design

HPA contends that the Park Crest Parties copied nine individual features of the Grant Park design.[142] The district court reviewed each of these nine features under this Court's extrinsic similarity test, JA8038-8054, and concluded that none of the elements is protected because they are either functional and/or standard individual features. *Id.* It concluded further that there is no substantial similarity because the expression of these nine features, JA8038-8054, as well as the overall arrangement and composition of spaces and elements as a whole, JA8056-58, are not substantially similar.

---

[141] *Ross I*, 496 F. App'x at 318; *Universal Furniture*, 618 F.3d at 436 (extrinsic test pertains only to the copyrightable aspects of a work); *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001); *Charles W. Ross Builder, Inc. v. OlsenFine Home Bldg., LLC*, 977 F. Supp 2d 567, 592 (E.D. Va. 2013); *Logan Developers Inc. v. Heritage Bldgs., Inc.*, No. 7:12-CV-323-F, 2014 WL 2547085 (E.D.N.C. June 5, 2014); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) (extrinsic test requires analytical dissection of the work).
[142] JA52; JA76; JA231; JA477.

HPA relies upon the declaration of Mr. Figert as genuinely disputing the

Park Crest Parties' expert declarations. Yet. Mr, Figert offered no rebuttal to any of

them.

> Q:    Okay. And you do not intend to offer any rebuttal
>        testimony at trial to rebut any of the points in Mr.
>        Greenstreet's report, do you?
> A:    Not unless I'm ask to. I don't intend to this time unless
>        I'm asked to.
>
>                          *       *       *
>
> Q:    Okay. Just as you had an opportunity before October 22
>        with Greenstreet's report, you had an opportunity to
>        respond to Doug Carter's report. Correct?
> A:    Timeliness, yes, sir.
> Q:    Okay. And you did not do so?
> A:    I did not.
>
>                          *       *       *
>
> Q:    Okay, and you do not intend to offer any rebuttal
>        testimony to [Steven Gresham's] report either. Correct?
> A:    I do not intend to at this time.

JA1554-1555(199:18-22; 204:1-11; 204:22-24). Mr. Carter's, Dr. Greenstreet's,

and Mr. Gresham's expert reports remain uncontested.

### 1.    A High-Rise Building Is a Standard Feature and is Expressed Differently

There is no dispute that the concept of a high-rise building is an individual

standard feature that is not protected by copyright. JA8043-8044. Nor is there any

dispute that the high-rise concept is expressed differently in the two designs.[143]
HPA does not genuinely dispute these facts.

### 2. Two Elevator Cores Connected by a Fire or Service Corridor Is a Standard Feature Required by Code and is Not Substantially Similar in the Two Designs

The district court noted that "the use of multiple elevator cores that provide units with direct access to elevator lobbies 'is a well-known design idea or concept' and thus standard." JA8045. The district court concluded that the two designs are not substantially similar. JA8046. HPA contends that the district court improperly weighed the evidence and neglected the declarations of three of HPA's witnesses on these issues. HPA's Opening Br. at 19-20.

Yet, the "evidence" HPA relies upon, Mr. Figert's declaration, is conclusory and fails to compare the two core's designs. JA8046. At best, Mr. Figert contradicts his own, as well as Mr. Humphreys's, sworn testimony.

> Q:    That's [fire or service corridor between elevator lobbies] a code requirement in Fairfax County. Correct?
> A:    Yes.

JA1538(108:6-8). *See also* JA1539(111:17-20). Mr. Humphreys admitted the same.

> Q:    Okay. Is that a yes or a no that a service corridor connecting the staircases is a code requirement?
> A:    **If I took my design to Fairfax County, it would be the same as Minneapolis. It has to be connected.**

---

[143] JA8044-8045, JA1598, JA1599-1600 (Humphreys); JA1535 (Figert).

> Q:    Because it's required by code, right?
> A:    **Well, I'm doing it as a fire corridor. Yes.**

JA1609(187:14-22). Self-impeachment does not genuinely dispute this fact.[144] Nor

do the Lux and Hunt declarations. Even accepting that Mr. Lux and Mr. Hunt were

unaware that these standard features are code requirements does not genuinely

dispute that they were present in the buildings, as attested to by other declarants.

JA8045. Rather, their avowed lack of knowledge precludes them from contesting

these facts.[145]

### 3.    Direct Access is a Standard Feature and Is Expressed Differently

It is uncontested that direct access to residential units from an elevator lobby

is a standard feature.[146] This feature is not expressed in a substantially similar way

in the two designs.[147] HPA contends that the district court improperly weighed the

evidence in reaching these conclusions. HPA's Opening Br. at 22.

HPA contends that Mr. Figert "disputes" that this is a standard feature. Yet,

HPA concedes that it was used in Harbor Towers.[148]

> Q:    Okay. Does it [Harbor Towers] depict access from the
> residential units into one of the two elevator lobbies?

---

[144] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.
[144] Fed. R. Evid. 602.
[145] JA8046-8047; JA1778; JA1755; JA2057; JA1786; JA2321.
[146] JA8046-8047; JA 1778 (Jenkins); JA1755 (Swedroe); JA2057 (Carter); JA1786 (Greenstreet); JA2321 (Gresham).
[147] JA8046-8047; JA2060 (Carter); JA1797 (Greenstreet); JA2326 (Gresham).
[148] *See also* JA1755; JA1786; JA2322.

A:    It appears that it does.

JA1619(244:6-9) (Humphreys 30(b)(6) Dep.). Given Mr. Figert's testimony that he is ignorant of these facts,[149] HPA's reliance on Mr. Figert's opinion on this issue is not reasonable. The district court's determination on admissibility, JA8046-8047, may be reviewed only for abuse of discretion.[150]

HPA has offered no evidence genuinely disputing that direct access is expressed differently in the two designs.[151] Rather, Mr. Humphreys's and Mr. Figert's sworn testimony confirms it.[152] HPA cannot generate a genuine issue of material fact by impeaching its own witnesses.[153]

### 4.    A Barbell-Shaped Floor Plan is Standard Feature and Is Expressed Differently

It is uncontested that a barbell-shaped floorplan is a standard feature. JA8048-49. Although it failed to genuinely dispute this fact, HPA now contends that the district court improperly weighed the evidence. HPA's Opening Br. at 22.

The declarations of Humphreys, Hughes, Hunt, and Lux on the originality of the Grant Park design, HPA's Opening Br. at 22, do nothing to genuinely dispute that a barbell-shaped floorplan is a standard feature. Even accepting that none of

---

[149] JA1547(148:15-18).
[150] *Cole*, 631 F.3d at 153; *Creekmore*, 662 F.3d at 690; *Grimmond*, 137 F.3d at 831.
[151] JA2060 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).
[152] JA1609-1610; JA1541 (Humphreys).
[153] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

them was aware of the use of this feature by others,[154] does not genuinely dispute

that it was in fact standard. Far from establishing a genuine issue, Messrs.

Humphreys', Hughes', Hunt's, Lux's, and Figert's avowed unawareness precludes

them from having any basis from which to testify on this issue.[155]

Similarly, this feature is expressed differently in the two designs. JA8048.

HPA contends that the district court improperly weighed the evidence. HPA's

Opening Br. at 22. Yet again, their declarations contradict their own testimony.

> Q:    So the Park Crest Two floor plan is much more narrowly
>        waisted in the center section than the Grant Park design,
>        correct?
> **A:    Correct.**
>
> *        *        *
>
> Q:    In fact, the Two Park Crest design is substantially more
>        dumb bell shaped than the Grant Park design is correct?
> **A:    Correct.**

JA1602(160:6-22); JA1611(194:5-17) (Humphreys).

> Q:    Well, could be at least agreed that the narrowness of the
>        waist relative to the extent of the ends is a lot more
>        narrow in Park Crest Two than it is in Grant Park?
> A:    It is some – it is more narrow. It is somewhat different.
>        They are different in that regard.

---

[154] JA2056-2058 (Carter); JA1792-1794 (Greenstreet); JA2318-2324 (Gresham).
[155] Fed. R. Evid. 602.

JA1544(134:18-23) (Figert). HPA cannot genuinely dispute material facts by impeaching its own witnesses.[156]

### 5.    Mechanical, Electrical, and Trash Rooms Are Functional and Standard Features and Are Expressed Differently

The district court noted that HPA acknowledges that mechanical/electrical rooms and trash chutes are standard features and often required by building codes.[157] HPA does not dispute these facts.

The district court did not expressly determine that this feature is expressed differently. JA8049. Nonetheless, the record contains ample evidence that they are expressed differently, providing an alternative basis for affirming the judgment.[158] HPA contends that Mr. Humphreys and Mr. Figert submitted declarations on the similarity of the designs. HPA's Opening Br. at 22. Yet, they acknowledged that the designs are different.

> Q:    They're on opposite sides. Right?
> A:    Yes, sir.

JA1545(139:1-2). HPA cannot generate a genuine issue of material fact by impeaching its own witnesses.[159]

---

[156] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.
[157] JA8049; JA1584, 1545 (Humphreys).
[158] JA1544-1545(136:25-137:7); JA1545(140:6-13) (Figert); JA1624, (Carter).
[159] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

### 6.    Exit Staircases are Functional and Standard Features and Are Expressed Differently

The district court noted that there is no dispute that locating exit stairways adjacent to elevators is a standard feature. JA8050. The district court noted further that the evidence of record, including Mr. Figert's Report, establishes that this feature is functional. *Id.* HPA identifies no evidence genuinely disputing these conclusions.

The district court also notes that this feature is expressed differently in the two designs. JA8050. The record contains ample evidence supporting this conclusion,[160] and no evidence genuinely disputing it. HPA contends that Mr. Humphreys and Mr. Figert both submitted declarations on the "similarity" of the designs. HPA's Opening Br. at 22. Yet, Mr. Humphreys acknowledged during his deposition that they are expressed differently.

> Q:    Okay. And the emergency stairs are not on the – behind one of the passenger elevators on each bank, correct?
> **A:    Correct.**
> Q:    In fact, they are across the lobby on the other side of the lobby, correct?
> **A:    Correct.**

JA1608(182:19-183:4). Mr. Figert agrees that the Park Crest Parties alternative

---

[160] JA1608(182:19-183:4), JA(184:11-17) (Humphreys); JA1546(144:19-145:6), JA1545(140:6-11); JA2061 (Carter); JA1795-1799 (Greenstreet); JA2325-2327 (Gresham).

design would have cost at least a million dollars more.[161] HPA cannot genuinely

dispute material facts by impeaching its own witnesses[162]

### 7.     Diagonal Entrance Hallways in the Corner Units Are Standard Features and Are Expressed Differently

The district court noted that HPA does not challenge that diagonal entrance

hallways are both standard and functional. JA8051. Yet, HPA contends that the

district court improperly weighed the evidence in determining that this is a

standard feature. HPA's Opening Br. at 22. The uncontested evidence establishes

that this is a standard feature.[163] HPA does not genuinely dispute this fact.

This standard feature is expressed differently in the two designs. JA8051.

The entry hallways in Park Crest Two are not diagonal. JA8052. HPA contends

that Mr. Humphreys and Mr. Figert genuinely dispute this fact. HPA's Opening Br.

at 22. Instead, they concede it.

---

[161] JA1546(144:19-145:6).

[162] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

[163] JA2058 (Carter); JA1795-1799 (Greenstreet); JA2332-2334 (Gresham).

> Q:   …At the front door, the access entrance hallway is parallel to the rear façade of the building, correct?
>
> **A:   Correct.**
>
>                        \*       \*       \*
>
> Q:   Okay. And at the point of entry into the unit, it is not diagonal, correct?
>
> **A:   It is not diagonal.**

JA1613(203:16-19, 204:12-14) (Humphreys).  Mr. Figert attests to the same facts.

> Q:   Okay. And in the Grant Park design, the access for the top  three units on the left–hand core, those are all diagonal. Right? They're at a 45–degree angle?
> A:   The door is diagonal, yes, sir.
> Q:   So it's at a 45-degree angle to the long axis of the building. Right?
> A:   Yes.
> Q:   Okay. And on the Park Crest Two design, the access to that H-shaped elevator lobby is all either parallel or perpendicular to the long axis of the building. Correct?
> A:   Yes, it is. Those entrance doors are.

JA1539(113:4-16) (Figert). HPA cannot genuinely dispute these facts by impeaching its own witnesses.[164]

### 8.   Vertical Elements on the Façade Are Standard Features and Are Expressed Differently

The district court noted that HPA did not contend that alternating vertical elements is a protectable feature. HPA concedes that this is standard feature.[165]

HPA contends now that the district court improperly weighed the evidence. HPA's

---

[164] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.
[165] JA8052; JA1629(379:19-382:3) (Humphreys).

- 50-

Opening Br. at 22. Yet, HPA has identified no evidence establishing any genuine

dispute this issue. Nor could it. HPA acknowledges that it is:

> Q:    And it's a standard feature, correct?
> A:    Well, it's a common part or element.

JA1629(382:2-3) (Humphreys). Contradictory statements by Mr. Humphreys and

Mr. Figert do no genuinely dispute this fact.[166]

The district court further concluded that the expression of this standard

feature is not substantially similar in the two designs. JA8052. HPA contends that

the district court improperly weighed the evidence. HPA's Opening Br. at 22. Yet,

HPA does not contest that the vertical elements are expressed differently.[167] They

are uncontroverted.[168] The façades are different.[169]

> Q:    And those are differences between the two designs. Right?
> A:    They are not identical. They are expressed differently.

JA1551(162:16-19). HPA's conflicting declarations cannot genuinely dispute these

facts.[170]

---

[166] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

[166] JA1585-1587, 1591-1592, 1598-1600, 1606 (Humphreys); JA1549-1551 (Figert).

[167] JA1585-1587, 1591-1592, 1598-1600, 1606 (Humphreys); JA1549-1551 (Figert).

[168] JA2062 (Carter); JA1798-1799 (Greenstreet); JA2329 (Gresham).

[169] JA1598-1601(149:6-157:8), 1606(174:15-176:4), 1612(199:19-22) (Humphreys); JA1550(160:9-19), 1550(160:20-161:2, 161:17-21), 1551(162:16-25, 163:1-4) (Figert).

[170] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

### 9.    Projecting Cornices is a Standard Feature and Is Expressed Differently

Cornices are a standard feature.[171] Again, HPA contends that the district court improperly weighed the evidence. HPA's Opening Br. at 22. Yet, HPA has identified no evidence establishing a genuine dispute on either point. Mr. Figert, HPA's architectural expert, admits that building have had cornices since the ancient Greeks and Romans.[172]

This standard feature is expressed differently in the two designs.[173] Yet, HPA contends that the district court improperly weighed the evidence. HPA's Opening Br. at 22. Yet, again, Mr. Humphreys[174] and Mr. Figert[175] concede that it is expressed differently. Even were HPA to have submitted declarations contesting this fact—which it did not—it cannot genuinely contest it.[176]

### E.    The District Court Properly Analyzed the Overall Arrangement and Composition of Elements as Part of the Extrinsic Test and the Designs are Not Substantially Similar

Finally, the district court recognized that, even though each of the individual features asserted by HPA are not protectable because they are either functional or

---

[171] JA8053, JA1629 (Humphreys); JA1552(169:5-13) (Figert); JA2056-2058 (Carter); JA1793-1794 (Greenstreet); JA2331-2332 (Gresham).
[172] JA1552(169:5-13).
[173] JA8054; JA1587-1588, 1590, 1598-1599 (Humphreys); JA1552 (Figert).
[174] JA1587-1588, 1590, 1598-99.
[175] JA1552.
[176] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

individual standard features, the district court must nonetheless consider whether the overall "arrangement and composition" of the elements is protectable and is substantially similar. JA8054-8058. HPA argues—inconsistently—that the district court both failed to analyze the overall arrangement and composition, effectively stripping architectural works of copyright protection, HPA's Opening Br. at 28-32, 39-40, and that the district court erred by analyzing the overall arrangement and composition of the designs, HPA's Opening Br. at 58-59. Neither argument accurately describes the district court's decision.

The district court concluded that the overall "arrangement and composition of spaces and elements" is also functional and is a standard arrangement. JA8055-8056. Although HPA contends on this appeal that the district court erred in this conclusion, HPA's Opening Br. at 28-32, the evidence of record supporting this conclusion remains uncontested.[177] HPA identifies no evidence that genuinely disputes the functional and standard character of this arrangement and composition of features. And Mr. Figert admits they are standard.[178]

Even were HPA correct in its challenge—and it is not—the district court does not rely on this conclusion that the overall arrangement and composition is functional and standard as a basis for its judgment. JA8056. Rather, even assuming

---

[177] JA6209-6211 (Figert); JA2049, 2056 (Carter); JA1786, 1794 (Greenstreet).
[178] JA6209-6211.

- 53-

the arrangement and composition of elements are protectable, they are expressed

differently in the two designs. JA8056.

Each of the nine individual features is expressed differently. JA8038-8058.

The only remaining portion of the designs is the unit plans of the individual

residential units. In fact, HPA's corporate representative concedes that the Grant

Park and Park Crest Two residential unit plans are different.[179]

> Q:    The same place.
> **A:    It steps in more as ours steps in more but you know
> they are different. They are different, he has plugged
> in different plans in our place.**
> Q:    They are different, correct?
> **A:    They are different.**
>
>                         *        *        *
>
> Q:    Well, no, I'm asking. You don't see any difference at all
> between the Grant Park and Park Crest Two, is that right?
> **A:    Well, he substituted some of our floor plans for other
> floor plans.**

JA1603(164:11-16), 1616(216:7-11) (Humphreys). There is nothing left of

the Park Crest Two design that could be substantially similar to the Grant

Park design.

Unsupported and conclusory declarations that contradict the witness's prior

deposition testimony do not genuinely dispute these facts. The district court's

---

[179] JA1603(164:6-16), 1610(191:17-192:12), 1615(211:1-5), 1616(216:7-12) (Humphreys).

ruling on admissibility is reviewed only for abuse of discretion and there is no such abuse here.[180]

### F.    Intrinsic Analysis Was, and Is, Unnecessary to the Court's Judgment

HPA contends that the district court usurped the jury's role by undertaking an intrinsic analysis of the designs. HPA's Opening Br. at 58. This is incorrect. The district court expressly noted that the parties disputed the intended audience, declined to resolve this issue as being moot in view of its ruling on the extrinsic test, and noted that this issue is for the jury. JA8058-8060. The district court expressly declined to resolve this issue. JA8059.

Rather, the district court based its judgment on its extrinsic analysis alone. JA8060. Given the HPA is required to prove both extrinsic and intrinsic similarity, intrinsic similarity is not material to the district court's judgment. JA8060.[181]

### VI.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF CLARK BECAUSE HPA FAILED TO IDENTIFY ANY EVIDENCE THAT CLARK HAD ACCESS TO THE COPYRIGHTED GRANT PARK DESIGN

The district court correctly dismissed HPA's infringement claim against Clark for the additional reason that the uncontested evidence shows that Clark lacked access to the copyrighted design.[182]

---

[180] *See Cole*, 631 F.3d at 153; *Creekmore*, 662 F.3d at 690; *Grimmond*, 137 F.3d at 831.

[181] *Universal Furniture*, 618 F.3d at 435; *Bldg. Graphics,* 708 F.3d at 580-81*; Funky Films*, 462 F.3d at 1077; *Ross I*, 496 Fed. App'x at 318-20.

To prove that Clark's construction of Park Crest Two directly infringes HPA's rights,[183] HPA must establish that: (1) it owns a copyright in the Grant Park design and (2) Clark copied protected elements of that work.[184] The district court's ruling focuses on the second prong of the direct infringement test (copying of protected elements), under which HPA must prove that the registered Grant Park design was actually copied by Clark, or that it is "reasonably possible that the paths of the alleged infringer [here, Clark] and the allegedly infringed design [here, Grant Park] crossed."[185] The district court correctly concluded that HPA failed to point to any evidence that Clark had access to the Grant Park design. Without access, there can be no improper copying.[186]

At summary judgment, HPA did not dispute that no Clark representatives have visited the Grant Park Condominiums.[187] Clark was not aware of the design of the Grant Park Condominiums before this lawsuit.[188] Clark was not involved in the development of the design for the Two Park Crest building. Rather, the design was developed and set by Lessard before Clark was asked to bid on or hired to

---

[182] JA8034-8035.

[183] HPA conceded during the summary judgment briefing below that it does not pursue liability against Clark for indirect infringement, but rather, limits its claims against Clark to direct copyright infringement. JA5772; JA6141; JA8034-8035.

[184] *Feist*, 499 U.S. at 361.

[185] *Building Graphics*, 708 F.3d at 578-79 (internal citations omitted); *see also Towler*, 76 F.3d at 582.

[186] JA 8034-8035.

[187] JA 5773.

[188] JA 5776.

build Two Park Crest.[189] In other words, HPA simply did not dispute that Clark lacked access to the Grant Park design.

On appeal, HPA raises a new argument—that it does not have to provide any evidence of access because the fact that Clark built Park Crest Two based on plans created by Lessard somehow constitutes direct evidence of copying the Grant Park design.[190] Since HPA did not raise this issue before the district court, this Court need not consider it on appeal.[191] Nevertheless, HPA's new argument is similarly unsupported by any record evidence, is wrong on the law, and is not a sufficient basis to overturn the district court's judgment in Clark's favor.

HPA primarily relies upon *Range Road Music*,[192] and the unremarkable axiom that "copying" is shorthand for the violation of any exclusive right, to argue that Clark's construction of the Two Park Crest building from the Lessard-created plans constitutes direct evidence of Clark's actual copying of the Grant Park work.[193] But *Range Road Music* is inapposite—it involves public performance of

---

[189] JA5776-5778.
[190] HPA's Opening Br. at 59-60.
[191] *See Sierra Club v. Larson*, 882 F.2d 128, 133 (4th Cir. 1989); *Kinty v. United Mine Workers*, 544 F.2d 706, 722 (4th Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977) (absent exceptional circumstances, a claim not raised below will not be considered on appeal).
[192] *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012).
[193] HPA's Opening Br. at 59-61.

- 57-

musical works and the exclusive right to perform the copyrighted work publicly.[194]

And HPA's assertion that *Range Road Music* stands for the proposition that neither

access nor substantial similarity are required elements of copyright infringement is

incorrect. HPA omits the *Range Road Music* court's full explanation of its

analysis:

> "Substantial similarity" is not an element of a claim of
> copyright infringement. Rather, it is a doctrine that helps courts
> adjudicate whether copying of the "constituent elements of the
> work that are original" actually occurred when an allegedly
> infringing work appropriates elements of an original without
> reproducing it in toto.[195]

In that case, direct evidence of copying meant direct violation by public

performance of the identical musical works that were copyrighted and the only

question was whether the musical works were publicly performed or not.[196]

Likewise, all of the other cases relied upon by HPA for "direct evidence of

copying" are similarly distinguishable.[197]

---

[194] *Range Road Music*, 668 F.3d at 1153-54; *see* 17 U.S.C. § 106(4) (reserving to owners of copyrights in musical works the exclusive right to perform the copyrighted work publicly).

[195] *Id.* at 1154.

[196] *Id.* (citing *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989) (direct evidence of copying, which needs no circumstantial evidence of access or substantial similarity, can be made "when the defendant has engaged in *virtual duplication* of a plaintiff's entire work")).

[197] *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 201 (4th Cir. 1997) (library violated exclusive right to distribute a literary work by placing identical copies of the work in its collection and making them available to the public); *Johnson v. Jones*, 149 F.3d 494, 499, 502 (6th Cir. 1998) (affirming

Constructing a building is not one of the exclusive rights protected by copyright law.[198] As HPA admits, the Lessard plans are not duplicates of/identical to the Grant Park design. Rather, HPA's new direct infringement theory is that "Clark is making an unauthorized derivative of the Humphreys Grant Park Condominiums design in the form of the Two Park Crest building itself."[199]

To be sure, courts have held that builders can be held liable for copyright infringement. But in those cases, the allegedly copyrighted plans were actually provided to the builders or there was significant circumstantial evidence that the builder had access to the allegedly copyrighted work itself. Those circumstances are not present here.

## VII.  CONCLUSION

The district court properly considered all of the evidence of record and

---

determination that architect who created identical "tracings and re-labeled drawings" of copyrighted plans was not granted an implied license by plaintiff architect but making no mention, let alone findings, relating to builder); *Monterey Bay Homes*, 11 F. Supp. 3d at 578-580 (denying builder's motion for summary judgment because circumstantial evidence of copying, namely, access and substantial similarity was established); *Axelrod & Cherveny Architects v. Winmar Homes*, No. 2:05-cv-711, 2007 WL 708798, at ** 11-12   (E.D.N.Y. Mar. 6, 2007) (defendants conceded that the infringed work was copied from the copyrighted work, access and an opportunity to copy, and the works were virtually identical); *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp.2d 1, 4, 8 (D. Mass. 2002) (developer admitted access to virtually identical plans belonging to plaintiff architect).

[198] 17 U.S.C. § 106 (prohibiting copying, distribution, and preparation of a derivative work, without authorization).

[199] JA5784.

correctly applied Fourth Circuit and Supreme Court precedent. The uncontested evidence of record establishes that the nine asserted features, as well as the overall arrangement and composition of spaces and elements, are functional or standard features and that the designs are not substantially similar.

To resist summary judgment, HPA was required to identify evidence sufficient to genuinely dispute that these features are not functional or standard **and** that two designs are substantial similar. It failed to do so. Instead, HPA relied on conclusory declarations that failed to analyze the material issues raised by the Park Crest Parties' moving papers, lacked foundation, and contradicted the testimony of HPA's own witnesses. This is insufficient to establish a genuine dispute of material fact.[200] The evidence that these functional and standard features are expressed differently in the two designs remains uncontested.

Based on the uncontested evidence of record, the features relied upon by HPA are each functional or individual standard features that are not subject to copyright protection. More important, each of these individual features, as well as the overall arrangement and composition of the spaces and features, is not substantially similar in the Grant Park and Park Crest designs. The district court correctly held that the evidence of record establishes that no reasonable jury could find for HPA under this Court's extrinsic evidence test. The Park Crest Parties

---

[200] *Stevenson*, 743 F.3d at 422; *Barwick*, 736 F.2d at 960.

respectfully request that this Court affirm the district court's judgment.

Dated:  January 5, 2015

Respectfully submitted,

ANTIGONE GABRIELLA PEYTON
KANDIS M. KOUSTENIS
CLOUDIGY LAW PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
(703) 436-2033

*Counsel for The Penrose Group;
PDT Builders, LLC; Sixth Penrose
Investing Company, LLC; and Clark
Builders Group LLC*

___*/s/ Patrick J. Coyne*___
PATRICK J. COYNE
CHRISTOPHER P. FOLEY
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000
Fax: (202) 408-4400

*Counsel for Lessard Design, Inc.,
Lessard Group Inc., and Christian J.
Lessard*

CHRISTOPHER P. MEAD
LONDON & MEAD, LLP
1225 19th St., N.W.
Washington, D.C. 20036

*Counsel for Northwestern
Investment Management Company,
LLC, and Northwestern Mutual
Insurance Company*

**ADDENDUM**

Statutory Citations:

### 17 U.S.C. § 101 Definitions

As used in this title, the following terms and their variant forms mean the following:

An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

### 17 U.S.C. § 102 Subject Matter of Copyright: In general

(a)     Copyright operate protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
(1)     literary works;
(2)     musical works, including any accompanying words;
(3)     dramatic works, including any accompanying music;
(4)     pantomimes and choreographic works;
(5)     pictorial, graphic, and sculptural works;
(6)     motion pictures and other audiovisual works;
(7)     sound recordings; and
(8)     architectural works.
(b)     In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

### 17 U.S.C. § 103 Subject Matter of Copyright: Compilations and derivative works

(a)     The subject matter of copyright as specified in section 102 includes compilations and derivative works, but protection for a work employing pre-

- 1-

existing material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b)    The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the pre-existing material employed in the work, and does not imply any exclusive right in the pre-existing material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the pre-existing material.

### 17 U.S.C. § 106 Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)    to reproduce the copyrighted work in copies or phonorecords;

(2)    to prepare derivative works based upon the copyrighted work;

(3)    to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)    in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures or other audiovisual works, to perform the copyrighted work publicly;

(5)    in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)    in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing BRIEF OF APPELLEES, LESSARD, PENROSE, NORTHWESTERN, AND CLARK via the Court's CM/ECF system and via electronic mail upon the following counsel of record, this 5th day of January 2015:

> Walter Dekalb Kelley, Jr.
> HAUSFELD, LLP
> Suite 650
> 1700 K Street
> Washington, DC 20006
> Direct: 202-540-7200
> Email: wkelley@hausfeldllp.com
>
> Jennifer Loraine Swize
> JONES DAY
> 51 Louisiana Avenue, NW
> Washington, DC 20001-2113
> Direct: 202-879-5417
> Email: jswize@jonesday.com
>
> Patrick Andrew Zummo
> LAW OFFICES OF PATRICK ZUMMO
> Suite 3500
> 909 Fannin
> Two Houston Center
> Houston, TX 77010
> Direct: 713-651-0590
> Email: pzummo@zoomlaw.com

Dated:  January 5, 2015

*/s/ Patrick J. Coyne*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). As counted by the word processing program used to prepare it (Microsoft Word), the brief contains 12,041 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  January 5, 2015

                                        */s/ Patrick J. Coyne*